HAULERS INSURANCE COMPANY, INC., Plaintiff–Respondent,

v.

Rodger P. WYATT, Sr. and Jerry Wyatt, d/b/a Wyatt's Auto Sales, Rodger P. Wyatt, Jr., and Christopher Meyer, Defendants,

and

Rhonda Meyer, Defendant–Appellant.

No. 25868.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 2, 2005.

Rich A. Courtney, St. Louis, for appellant.

Jeffrey P. Hine, Kimberly S. Price, Osburn, Hine, Kuntze, Yates & Murphy, LLC, Cape Girardeau, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Haulers Insurance Company ("Haulers") filed a declaratory judgment suit against Rhonda Meyer ("Appellant") and others to determine the applicable liability limits under an "Amended Garage Coverage Form" insurance policy ("the policy") issued by it. On this appeal, Appellant contests the entry of a summary judgment in favor of Haulers. We affirm.

This case involves the issue of the amount of insurance coverage for injuries sustained in an automobile accident involving Appellant, Christopher Meyer ("Mr. Meyer"), and Rodger Wyatt, Jr. ("Wyatt"). Wyatt was driving a vehicle owned by Wyatt's Auto Sales when it collided with a motorcycle operated by Mr. Meyer and on which Appellant was a passenger, causing injuries to both of them. Appellant filed a personal injury suit against Wyatt, individually, and Jerry Wyatt and Rodger P. Wyatt, Sr., d/b/a Wyatt's Auto Sales ("Wyatt's Auto Sales").[1] Haulers had issued the policy to Wyatt's Auto Sales

---

1. Mr. Meyer also filed a separate personal injury suit against Wyatt and Wyatt's Auto Sales. He was included as a defendant in the declaratory judgment suit filed by Haulers which resulted in a summary judgment in its favor. That summary judgment was appealed by Mr. Meyer and was affirmed by this court in the companion case of *Haulers Insurance Co. v. Christopher Meyer,* Case No. 25871, 172 S.W.3d 880, 2005 WL 2108089 (Mo.App. 2005).

which included automobile liability insurance coverage on the vehicle driven by Wyatt.

The policy contains the following on the Amended Garage Coverage Form Declarations page:

**ITEM TWO**

SCHEDULE OF COVERAGES AND COVERED AUTOS

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Garage Coverage Form next to the name of the coverage. Entry of a symbol next to the LIABILITY provides coverage for "garage operations."

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Garage Coverage Form shows which autos are covered autos.) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 22 27 | $ 500,000 PER ACCIDENT $1,500,000 Other than auto only AGGREGATE | 1,166.00 |

Under the Covered Autos section of the policy, the number "22" is the symbol for "Owned 'Autos' Only" and the number "27" is the symbol for "Specifically Described 'Autos.'" The fact that the vehicle driven by Wyatt at the time of the collision in question was a "covered—auto" is not disputed.

The policy described liability for "'Garage Operations'—Covered 'Autos'" as:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos"

. . . .

... Our duty to defend or settle ends when the Liability Coverage Limit of Insurance—"Garage Operations"—Covered "Autos" has been exhausted by payment of judgments or settlements.

The policy also contains provisions concerning the limits of the insurance coverages. A section under "Limit of Insurance" is titled "'Garage Operations'—Covered 'Autos'" and provides:

For "accidents" resulting from "garage operations" involving the ownership, maintenance or use of covered "autos", the following applies:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" involving a covered "auto" is the Each "Accident" Limit of Insurance—"Garage Operations"—Covered "Autos" for Liability Coverage shown in the Declarations.

Damages and "covered pollution cost or expense" payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Covered "Autos" are not payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Other Than Covered "Autos".

The policy contains the following definitions:

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

. . . .

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

Haulers filed a declaratory judgment suit against Wyatt and Wyatt's Auto Sales as well as Appellant and Mr. Meyer, seeking a determination that its policy provided a single limit of $500,000 for the accident in question to satisfy both Appellant's and Mr. Meyer's claims. In her answer to the suit, Appellant contended that there was $1,500,000 in coverage under the policy. Both Haulers and Appellant filed motions for summary judgment. Appellant's motion, however, was premised on there being $500,000 coverage for her claims and another $500,000 for the claims of Mr. Meyer. The trial court entered summary judgment in favor of Haulers and declared that there was a total of $500,000 coverage under the policy for the claims of both Appellant and Mr. Meyer.

In entering judgment, the trial court held that the policy language in question was unambiguous and that:

The language of the declarations page can only mean [Haulers] is liable for a maximum total of $500,000 for an accident involving an auto owned by the insured. The language of the insurance policy does not support [Appellant's] argument that the injury to [her] was one accident and the injury to [Mr. Meyer] was a separate "accident." The policy states:

All "bodily injury," "property damage," and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident."

This appeal followed.

◼ Our review of a motion for summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when there is no genuine issue of material facts, and the moving party is entitled to a judgment as a matter of law. *First Nat. Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York*, 891 S.W.2d 140, 142 (Mo.App. S.D.1995). "The propriety of summary judgment is purely an issue of law." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. "[A]n appellate court need not defer to the trial court's order granting summary judgment." *Id.* "When considering appeals from summary judgments, the [appellate court] will review the record in the light most favorable to the party against whom judgment was entered." *Id.*

◼ Appellant presents one point on appeal. She claims that the trial court erred in granting the motion for summary judgment filed by Haulers, and in denying her motion for summary judgment, because the policy provides coverage in the amount of $500,000 per person injured in an accident. In support, she contends that the policy language defines an accident as bodily injury to "a person." In the alternative, she contends that to the extent there is any ambiguity in the definition of "accident," the policy is to be construed in favor of the insured. Essentially, Appellant argues that the definition of "accident" can be interpreted to mean that both she and Mr. Meyer suffered different accidents because each "suffered exposure to different conditions as widely varying physical forces were applied to each of their persons as they were flung in different directions from the motorcycle." She concludes that "there were two accidents, the

accident of [Appellant] and the accident of [Mr. Meyer]." In further support of this contention, Appellant points to the fact that the definition of "bodily injury" states that it is bodily injury sustained by "a" person. Consequently, she argues that the "clear interpretation is that each person's 'bodily injury' is a separate item."

Haulers contends that the policy language is unambiguous and provides only $500,000 coverage regardless of the claims made and damages resulting from any one accident. It argues that the insured event in this case was the one collision that occurred, not the separate injuries sustained by Appellant and Mr. Meyer. In support, Haulers cites *Kansas Fire and Cas. Co. v. Koelling*, 729 S.W.2d 251 (Mo.App. E.D.1987), in which the issue was whether, for the purpose of determining the amount of coverage under a liability policy, two separate accidents occurred when the insured driver collided with an oncoming vehicle as well as one he was trying to pass at the time. *Id.* at 252. The insurer contended that its obligation was satisfied by paying its maximum liability for one accident. *Id.* In determining the case, the appellate court considered the "cause" approach and the "effect" approach. *Id.* It explained that under the "cause" approach, an insured's single act is considered the accident from which all claims flow, while under the "effect" approach, each claim arising out of an insured's act is considered a separate accident. *Id.* It held that the "cause" approach rather than the "effect" approach applied and that only one accident was involved. *Id.* at 252–53.

With reference to Appellant's contention that the definition of "bodily injury" mandates an interpretation that each person's injuries are a separate accident, Haulers cites *Scottsdale Ins. Co. v. Robertson*, 338 Ill.App.3d 397, 272 Ill.Dec. 975, 788 N.E.2d 279 (Ill.App.2003). In *Robertson*, two people were injured and two others killed by carbon monoxide poisoning. *Id.* at 280. The issue was the amount of coverage available under an insurance policy issued by the insurer. *Id.* The policy defined bodily injury in exactly the same manner as the policy in the instant case. *Id.* at 281. The policy also defined "occurrence" in the same manner as the present policy defines "accident." *Id.* at 281–82. In *Robertson*, the injured parties argued that since the definition of "bodily injury" made reference to "a person," each person's injury constituted a separate occurrence for purposes of the policy, and hence a separate limit. *Id.* at 282. The appellate court rejected that argument, finding that the use of "a person" was a qualitative, not a quantitative, reference to insure that the policy applied only to human bodily injury. *Id.* at 285. The court also found that if every instance of bodily injury constituted a separate occurrence under the policy, then the language in the policy limiting the amount of coverage for any one occurrence would be mere surplusage. *Id.*

Haulers argues that Appellant's interpretation of the policy would have the effect of changing its liability limits from a single limit policy (per accident) to a split limit policy (per person/per accident). Accordingly, Haulers argues that by allowing $500,000 of coverage per person injured in a single incident with a covered auto, if fifty people were injured in one accident, there would be $500,000 coverage for each of the fifty people. It contends that this is not what it or the insured intended when they entered into a single limit coverage insurance policy.

 Whether an insurance policy is ambiguous is a question of law. *Martin v. U.S. Fidelity and Guaranty Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). When

interpreting an insurance policy, "we give the language its plain meaning, which is the meaning that would ordinarily be understood by a layperson who bought the policy." *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 757 (Mo.App. S.D.2002). When there is "duplicity, indistinctness or uncertainty in the meaning of the words used in the insurance policy," there is an ambiguity. *Id.* Ambiguous provisions of an insurance policy are construed against the insurer. *Am. Standard Ins. Co. of Wisconsin v. May*, 972 S.W.2d 595, 602 (Mo.App. W.D.1998). However, this court will not distort unambiguous policy language to create an ambiguity. *Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 878 (Mo.App. E.D.1998). This court must consider the policy as a whole when interpreting the specific language at issue. *Am. Standard Ins. Co. of Wisconsin*, 972 S.W.2d at 602. "When construing an insurance policy, courts should interpret the policy language in a manner that is consistent with the reasonable expectations, objectives, and intent of the parties." *Am. Family Mut. Ins. Co. v. Bramlett*, 31 S.W.3d 1, 4 (Mo.App. W.D.2000).

We do not find Appellant's argument persuasive. The policy unambiguously limits liability coverage to $500,000 per accident, regardless of the number of people injured in that accident. The policy language clearly provides, in describing the limits of insurance for accidents involving a covered auto, that "[r]egardless of the number of ... claims made or vehicles involved ... the most we will pay for the total of all damages and 'covered pollution cost or expense' combined, resulting from any one 'accident' involving a covered 'auto' is the Each 'Accident' Limit of Insurance—'Garage Operations'—Covered 'Autos' for Liability Coverage shown in the Declarations." Appellant's contention that a layperson would believe that each person's injury was a separate "accident" is contrary to the plain meaning of the term "accident." An automobile collision between two vehicles that produces multiple injuries does not lead to the conclusion that there were multiple accidents, but rather one "accident" that produced injuries arising from that occurrence. This interpretation is in keeping with the "cause" approach approved in *Koelling*, 729 S.W.2d at 252–253.

Likewise, we find that Appellant's contention that by using the words "a person" in the definition of "bodily injury," and then incorporating "bodily injury" into the definition of "accident," impliedly defines "accident" as what happens to one person rather than to all persons involved in a collision is not well taken. In this regard, we agree with the reasoning of *Robertson*. We are required to interpret the policy in accordance with the intent of the parties. *Bramlett*, 31 S.W.3d at 4. If the parties had intended that the policy provide a separate limit of liability for each person injured in an accident, the policy could have, but did not state that. We will not stretch the language of the policy beyond the bounds of reason to create an ambiguity where this is none.

Appellant's point on appeal is denied. The judgment is affirmed.

PREWITT and RAHMEYER, JJ., concur.