# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1290

_____

Joshua Munroe; Tiffany Munroe

*Plaintiffs - Appellees*

v.

Continental Western Insurance Company, a Foreign Limited Liability Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2013
Filed: November 7, 2013

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Operating his employer's truck, Joshua Munroe was injured. After settling with the tortfeasors, Munroe and his wife sued Continental Western Insurance Company for underinsured motorist (UIM) coverage in his employer's policy. Continental moved for partial summary judgment on its maximum liability. The district court granted the motion in part, holding that the Munroes could not "stack"

their claims. The court denied the motion in part, finding a UIM limit of $2,000,000 rather than $500,000. Both parties appeal. Having jurisdiction under 28 U.S.C. § 1292(b), this court affirms in part and reverses in part.

## I.

On November 6, 2006, Munroe's tractor-trailer, owned by his employer, collided with three other vehicles. Munroe was seriously injured. He and his wife settled with the tortfeasors.

The Munroes then sued Continental, seeking UIM coverage under the employer's commercial automobile insurance policy. The policy's "Motor Carrier Declarations" specify a $500,000 UIM limit, and a $2,000,000 bodily-injury liability limit.

One endorsement to the policy—"Missouri Underinsured Motorists Coverage"—specifies a $500,000 UIM limit for each "accident." The "Coverage" section of the endorsement says:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle."

The "Limit of Insurance" section of the endorsement says:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit

of Underinsured Motorists Coverage shown in the Schedule or Declarations.

Another endorsement to the policy is a form—"Selection/Rejection of Underinsured Motorist Coverage":

Under Missouri Insurance Law (379.203), Underinsured Motorist Coverage is optional. The insured named in the policy may select a limit of Underinsured Motorist Coverage lower than the bodily injury liability coverage limit in the policy, but not less than the state financial responsibility limit or the insured named in the policy may choose to reject Underinsured Motorist Coverage.

Check item selected:

☐ Underinsured Motorist Coverage has been offered to me, however, it is being rejected.

☐ Agrees to purchase Underinsured Motorist Coverage at the state financial responsibility limits of 25/50.

☐ Agrees to purchase Underinsured Motorist Coverage at the limit indicated below which is less than the policy bodily injury limit.

(Enter limits of liability selected)

$ _____ each accident

When Munroe's employer received the policy, the form was blank. On the date of the collisions, the form was still blank. The employer signed and returned it one month later, selecting a $500,000 UIM limit—the same as the declarations page and UIM coverage endorsement.

Continental moved for partial summary judgment, seeking a declaration that its maximum UIM liability is $500,000. The Munroes sought up to $2,000,000 in UIM coverage. They further argued that the policy allows stacking, permitting them six claims (two against three drivers) for a total of $12,000,000.

The district court first ruled that the policy does not permit stacking (thus allowing only one UIM claim). However, finding the UIM limit ambiguous, the court applied the $2,000,000 bodily injury limit. Continental appeals the denial of its motion for partial summary judgment. The Munroes cross-appeal the rejection of their stacking claim.

This court reviews de novo a grant of summary judgment, viewing the record most favorably to the nonmoving party and drawing all reasonable inferences for that party. *Chambers v. Pennycook*, 641 F.3d 898, 904 (8th Cir. 2011). This court reviews de novo the district court's construction of an insurance policy and interpretation of state law.[1] *Arkansas Power and Light Co. v. Hartford Steam Boiler Inspection and Ins. Co.*, 257 F.3d 853, 856 (8th Cir. 2001) (insurance policy); *Salve Regina Coll. v. Russell*, 499 U.S. 225, 239 (1991) (state law).

## II.

The Munroes argue that the policy's selection form creates an ambiguity in the UIM limit, necessitating a $2,000,000 limit. Under Missouri law, courts apply the general rules of contract construction when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). If the policy is unambiguous, it will be enforced as written, absent statutory or policy considerations.

---

[1]The parties agree Missouri law applies.

***Rodriguez v. Gen. Acc. Ins. Co. of Am.***, 808 S.W.2d 379, 382 (Mo. banc 1991). If ambiguity exists, the court interprets the policy in favor of the insured. ***Todd***, 223 S.W.3d at 160. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." ***Burns v. Smith***, 303 S.W.3d 505, 509 (Mo. banc 2010), *quoting* ***Seeck v. Geico Gen. Ins. Co.***, 212 S.W.3d 129, 132 (Mo. banc 2007). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." ***Ritchie v. Allied Prop. & Cas. Ins. Co.***, 307 S.W.3d 132, 135 (Mo. banc 2009). Courts must also "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." ***Dibben v. Shelter Ins. Co.***, 261 S.W.3d 553, 556 (Mo. App. 2008).

The Munroes rely on the Missouri Supreme Court's decision in *Rice v. Shelter Mutual Insurance Co.*, 301 S.W.3d 43, 48 (Mo. banc 2009). There, an exclusionary clause limited coverage to the statutory minimum, but another policy provision granted more coverage. ***Id.*** The court held for the insured, finding that the provisions are "entirely inconsistent and cannot be reconciled. The policy expressly limits coverage to the statutory minimum and yet purports to grant full coverage to all provisions that exceed the statutory minimums." ***Id.*** The court reiterated "well-settled Missouri law" that "inconsistent and irreconcilable provisions in an insurance policy create an ambiguity that will be resolved in favor of the insured." ***Id.*** at 49.

*Rice* is distinguishable. Its policy language expressly granted coverage in one section and limited it in another. ***Id.*** at 48. Here, the policy's declarations page and UIM coverage endorsement specify $500,000 in UIM coverage. *See* ***Wasson v. Shelter Mut. Ins. Co.***, 358 S.W.3d 113, 118 (Mo. App. 2011) ("Ordinarily, one begins with the declarations page and the coverage declarations there."). The blank selection form does not indicate a UIM limit. It, therefore, does not withdraw UIM coverage or change its limit. *See* ***Browning v. GuideOne Specialty Mut. Ins. Co.***,

-5-

341 S.W.3d 897, 903 (Mo. App. 2011) ("Here, the declarations page clearly stated the specific terms under which UM Coverage was provided . . . we find nothing in the Policy that 'changed' the declarations page or reflected a 'different intention' anywhere else in Policy."). The form does not create an irreconcilable difference with the policy's governing documents. *Rice*, 301 S.W.3d at 48-49. *See also* **Christensen v. Farmers Ins. Co., Inc**., 307 S.W.3d 654, 658 (Mo. App. 2010), *quoting* **Jackson v. Gen. Accident Ins. Co.**, 720 S.W.2d 428, 429 (Mo. App. 1986) ("When the declarations page clearly communicates the coverage provided by the insurance contract, and the other policy provisions neither expressly change the coverage nor 'reflect a different intention than that clearly expressed on the declarations page,' the declarations page controls."). And it does not render the policy open to two interpretations. *See* **Mendota Ins. Co. v. Ware**, 348 S.W.3d 68, 71 (Mo. App. 2011) ("An insured is entitled to a pro-coverage interpretation of an insurance policy if the terms are susceptible of two possible interpretations and there is room for construction.") (internal quotation marks omitted), *quoting* **Burns**, 303 S.W.3d at 512. Accordingly, the selection form creates no inconsistency, duplicity, uncertainty, or indistinctness. *See* **Burns**, 303 S.W.3d at 509; *Rice*, 301 S.W.3d at 48.

The selection form does allow a modification of the policy, changing the UIM limit from $500,000 or rejecting coverage. However, to determine UIM coverage for Munroe, this court looks to the policy in effect on the date of the collisions. *See generally* **Stewart v. Royal**, 343 S.W.3d 736, 737 (Mo. App. 2011); **Mansion Hills Condo. Ass'n v. American Family Mut. Ins. Co.**, 62 S.W.3d 633, 635 (Mo. App. 2001). A policy is not ambiguous because it can be amended at a future date. *See* **American Standard Ins. Co. of Wisconsin v. Stinson**, 404 S.W.3d 303, 311 (Mo. App. 2012) ("[T]he subsequent policy is not an issue in this case and therefore is not relevant. . . . What was clear and unambiguous did not become ambiguous due to

change in the verbiage of a subsequent insurance policy."). On the day of the collisions, the policy provided a $500,000 UIM limit.[2]

Because the declarations page and UIM coverage endorsement specify a $500,000 UIM limit and the selection form does not contradict this limit, there is no ambiguity. The district court erred in finding a $2,000,000 UIM limit.

III.

On cross-appeal, the Munroes argue that the policy permits stacking, allowing them each to bring a claim against the three other drivers, for a total of six UIM

---

[2]Continental concedes that if the employer never completed and returned the selection form, the policy's UIM limit may be ambiguous (but because it was eventually returned—confirming the $500,000 UIM limit on the declarations page and UIM coverage endorsement—there is no ambiguity). This concession is baseless. *See* ***Gander v. Livoti***, 250 F.3d 606, 609 (8th Cir. 2001) ("The law is clear that stipulations of law are not binding on the court."), *citing* ***Sanford's Estate v. Commissioner of IRS***, 308 U.S. 39, 51 (1939). The form does not say it must be returned in order to have UIM coverage. *See* ***Haggard Hauling & Rigging Co. v. Stonewall Ins. Co***., 852 S.W.2d 396, 401 (Mo. App. 1993) ("The rule requiring that an insurance policy be construed favorably to an insured in cases of ambiguity does not permit a strained interpretation of the language of the policy in order to create an ambiguity where none exists.").

The district court believed that the selection form's language "may select a limit of Underinsured Motorist Coverage lower than the bodily injury liability coverage limit in the policy" necessarily implied that "the default coverage limit for underinsured motorists is the bodily injury liability coverage limit." To the contrary, this language tells the insured that the *maximum* UIM coverage is $2,000,000. Also contrary to the district court's view, the blank selection form is useful, allowing changes to the UIM limit from that on the declarations page and UIM coverage endorsement.

claims. Continental contends the stacking issue is not properly before this court because the Munroes did not timely raise it.

### A.

When a district court certifies an interlocutory order for immediate appeal, the appellant must file a petition for permission to appeal the certified order within 10 days. **28 U.S.C. §1292(b)**. "A party may file an answer in opposition or a cross-petition within 10 days after the petition is served." **Fed. R. App. P. 5(b)(2)**. The deadline is extended by three days if the party is served by mail. **Fed. R. App. P. 26(c)**. *See also* **Fed. R. App. 26(a)(1)** (method of computing days).

On December 14, 2012, the district court certified its December 5, 2011 partial summary-judgment order and its September 24, 2012 order on reconsideration for interlocutory appeal. Specifically, the district court found a "controlling question of law . . . regarding the amount of coverage under the policy." Within 10 days, Continental petitioned for permission to appeal the question "Does the Continental Western Policy provide $500,000.00 of insurance coverage or $2 Million of insurance coverage?"

Continental served the Munroes on December 26, 2012 via United States mail. On January 8, this court requested the Munroes "make the necessary arrangements to have [their] response filed immediately." The Munroes requested an extension "to file their Response and/or Cross-Petition for Permission to Appeal," asserting that Continental consented. This court granted the extension "to file response to the application for permission to appeal." On January 11, three days after the cross-appeal deadline, the Munroes filed a "Cross-Petition for Permission to Appeal." Continental did not object based on timeliness. On February 11, this court granted the petition for permission to appeal and the cross-appeal.

The ten-day filing requirement for interlocutory appeals in 28 U.S.C. § 1292(b) is mandatory and jurisdictional. *See Browder v. Director, Dep't of Corrs.*, 434 U.S. 257, 264 (1978); *Bartunek v. Bubak*, 941 F.2d 726, 728 (8th Cir. 1991). When the petition to appeal is not timely filed, this court and other circuits reject interlocutory appeals on jurisdictional grounds. *See, e.g.*, *General Television Arts, Inc. v. S. Ry*., 725 F.2d 1327, 1330 (11th Cir. 1984); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 246-47 (7th Cir. 1982); *Hellerstein v. Mr. Steak, Inc*., 531 F.2d 470, 471-72 (10th Cir. 1976); *Hanson v. Hunt Oil Co*., 488 F.2d 70, 72 (8th Cir. 1973); *Alabama Labor Council, AFL–CIO Pub. Emps. Union, Local No. 1279 v. Alabama*, 453 F.2d 922, 925 (5th Cir. 1972); *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 435 (3d Cir. 1958).

Similarly, some circuits hold that a Rule 5(b)(2) cross-appeal is a prerequisite to appellate review of issues raised by appellees on interlocutory appeal. *See, e.g.*, *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 n.44 (11th Cir. 2002) ("The plaintiff's failure to file a cross-appeal violates the requirement of Fed. R. App. P. 5(b)(2) and means that the plaintiffs have not preserved this issue for appeal."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639 (2008). *See also Reese v. BP Exploration (Alaska) Inc*., 643 F.3d 681, 689 (9th Cir. 2011) (suggesting but not deciding that a "cross-appeal is a prerequisite to appellate review of issues raised by appellees on interlocutory appeal"). *But see Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 365-66 (3d Cir. 2011) (allowing a cross-appeal where cross-appellant failed to petition for permission to appeal), *citing Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996).

Whether failure to *timely* file an interlocutory cross-appeal precludes appellate jurisdiction is a closer question. In *Yamaha Motor Corp., U.S.A. v. Calhoun*, the Supreme Court explained: "As the text of § 1292(b) indicates, appellate jurisdiction applies to the *order* certified to the court of appeals. . . . [Therefore,] the appellate court may address any issue fairly included within the certified order." *Yamaha*, 516

U.S. at 205.  *Yamaha* does not address how section 1292(b) interacts with Rule 5(b)(2)'s requirement that cross-appeals be filed within 10 days of receipt of the appellant's petition.  *Roth v. King*, 449 F.3d 1272, 1282 (D.C. Cir. 2006) (discussing the tension between section 1292(b) and Rule 5).  The Munroes' stacking claim arises from the same certified order Continental appeals.  Yet, the claim "appears to be a 'cross-petition' within the compass of Rule 5, which must be timely filed."  *Id.*

The Munroes' failure to timely file their cross petition does not preclude review of the stacking issue.  The Munroes cross-appeal the same certified order Continental appeals.  *See Tristani*, 652 F.3d at 366 (finding that a grant of appellant's leave to appeal pursuant to § 1292(b) gives the court jurisdiction over the entire certified order of the district court, "including any portions that were decided in the appellant's favor" even though appellees failed to properly cross-appeal).  Rule 5(b)(2) is not jurisdictional. *See Kontrick v. Ryan*, 540 U.S. 443, 452-56 (2004) (holding that non-statutory rules of procedure are not jurisdictional because only Congress may determine a federal court's subject-matter jurisdiction).  This court granted the petition to cross-appeal, and will consider it.  *But see Tranello v. Frey*, 962 F.2d 244, 248 (2d Cir. 1992) ("The failure to file the petition for permission to cross-appeal within the time provided is a jurisdictional defect, barring this Court from hearing Tranello's cross-appeal."); *Rodriguez v. Banco Cent.*, 917 F.2d 664, 668-69 (1st Cir. 1990).[3]

B.

On the merits of the stacking issue, the Munroes first argue that the policy provides separate UIM coverage for *both* of them against *each* of the three underinsured motorists, for a total of six UIM claims.  By the UIM coverage

---

[3]*Tranello* and *Rodriguez* based their analyses in part on Federal Rule of Appellate Procedure 5.  Since these cases, the Supreme Court has held that non-statutory rules of procedure are not jurisdictional.  *Kontrick*, 540 U.S. at 452-56.

-10-

endorsement's "Coverage" section, Continental will pay all sums "the insured is legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle." The Munroes reason that they both are "the insured" under this section, and the accident involved three underinsured motor vehicles. Therefore, they are entitled to six claims.

This argument ignores the endorsement's "Limit of Insurance" section (an anti-stacking provision):

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Underinsured Motorists Coverage shown in the Schedule or Declarations.

This provision limits damages "resulting from any one accident" to $500,000 (the limit of UIM coverage in the policy) regardless of the number of covered autos, insureds, premiums paid, claims made, or vehicles involved.

The Munroes attack the anti-stacking provision as ambiguous. *See **Krombach v. Mayflower Ins. Co**.*, 827 S.W.2d 208, 210-11 (Mo. banc 1992) ("Ambiguous provisions of a policy designed to cut down, restrict, or limit insurance coverage already granted . . . must be strictly construed against the insurer."). They contend the phrase "involved in the accident" modifies only the word "vehicles" and not the antecedents "autos," "insureds," "premiums paid," or "claims made." The Munroes also maintain the limit is inapplicable because it applies to "vehicles," not "underinsured motor vehicles," which it argues is a separate and distinct class. *See generally **Versaw v. Versaw**,* 202 S.W.3d 638, 645 (Mo. App. 2006).

These arguments are without merit. The Munroes provide no authority for limiting the phrase "involved in the accident" to the word "vehicles." More

-11-

importantly, they fail to articulate the importance of that phrase to their interpretation of the policy. Removing the contested language, the provision reads: "Regardless of the number of covered 'autos,' 'insureds,' premiums paid, claims made or vehicles, the most we will pay for all damages resulting from any one 'accident' is [\$500,000]." Even without the language, the provision limits recovery to \$500,000 regardless of the number of vehicles or people involved in the accident.

Similarly, the Munroes fail to explain how "underinsured motor vehicles" are not a subclass of "autos" or "vehicles" covered by the anti-stacking provision. The policy defines "underinsured motor vehicles" as "a land motor vehicle or trailer" with insufficient coverage at the time of the accident. "Autos" are defined as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." The policy does not define the word "vehicles." When an insurance policy uses an undefined term, it "will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Manner v. Schiermeier*, 393 S.W.3d 58, 62 (Mo. banc 2013), *quoting **Krombach***, 827 S.W.2d at 210. *See also **American Family Mut. Ins. Co. v. Peck***, 169 S.W.3d 563, 567 (Mo. App. 2005) ("The fact that a term remains undefined in a policy does not necessarily render it ambiguous."). "To determine the ordinary meaning of a term, courts consult standard English language dictionaries." *Lupo v. Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 22 (Mo. App. 2002). Webster's Third New International Dictionary defines "vehicle" as "an agent of transmission: carrier." **Webster's Third New International Dictionary** 2538 (3d ed. 1961).

Applying these definitions to the policy, a lay person would understand that "underinsured motor vehicles" are a subclass of "autos" and "vehicles" covered by the anti-stacking provision. *See **Corrigan v. Progressive Ins. Co.***, No. ED 99380, 2013 WL 4815158, at *7 (Mo. App. Sept. 10, 2013) ("Applying the definition of 'vehicle' to the terms of the insurance policy at hand, it is reasonable to assume a lay person would understand that a motorcycle is encompassed within the definition of

vehicle, such that the policy's restrictions and limits on liability with regards to vehicles also apply to motorcycles.").

Most significantly, the Munroes ignore the unambiguous language that "the most [Continental] will pay for all damages resulting from any one 'accident'" is $500,000. The Munroes inject ambiguity where none exists. *Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 381-83 (Mo. banc 1991) (finding an anti-stacking provision clear and unambiguous where it applied "regardless of the number of 'insureds'; claims made; vehicles or premiums shown in the Declarations; or vehicles involved in the accident"). The only reasonable construction of the anti-stacking provision is: For each accident, Continental is liable for up to $500,000. *See Haulers Ins. Co. v. Wyatt*, 170 S.W.3d 541, 545 (Mo. App. 2005) ("The policy unambiguously limits liability coverage to $500,000 per accident, regardless of the number of people injured in that accident. The policy language clearly provides, in describing the limits of insurance for accidents involving a covered auto, that '[r]egardless of the number of . . . claims made or vehicles involved . . . the most we will pay for the total of all damages . . . resulting from any one accident involving a covered auto is the Each Accident Limit of Insurance.'") (internal quotation marks omitted).

Finally, the Munroes assert that the collisions constituted more than one accident, entitling them to multiple UIM limits. There are two ways to interpret the word "accident." The "cause" approach finds that "an insured's single act is considered the accident from which all claims flow." *Kansas Fire & Cas. Co. v. Koelling*, 729 S.W.2d 251, 252 (Mo. App. 1987). The "effect" approach finds that "each claim arising out of an insured's act is considered a separate accident." *Id. See also Haulers*, 170 S.W.3d at 545.

The cause approach is appropriate here. Missouri courts apply the cause approach to similar policies. *See Haulers,* 170 S.W.3d at 545; *Kansas Fire*, 729

S.W.2d at 252.  *See also* **Allstate Prop. & Cas. Ins. Co. v. McBee**, No. 08-0534-CV-W-HFS, 2009 WL 1124973, at *5 (W.D. Mo. Apr. 27, 2009) (adopting the cause approach for policies that limit recovery resulting from one occurrence regardless of the number injured).  Like *Haulers*, the policy here defines "accident" as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"  *See* **Haulers**, 170 S.W.3d at 544.  Like *Haulers* and *Kansas Fire*, the anti-stacking provision here applies regardless of the number of vehicles, claims, or insureds.  *See* **id.** at 543; **Kansas Fire**, 729 S.W.2d at 252.

In light of the policy's definition of "accident" and its unambiguous anti-stacking provision, it is unreasonable to conclude that Munroe was involved in three accidents.   *See* **Rodriguez**, 808 S.W.2d at 383-84 (where policy language unambiguously prohibits stacking, courts will not create extra coverage).  Under the cause approach in *Haulers* and *Kansas Fire*, Munroe's injuries resulted from continuous or repeated exposure to the same conditions (collisions) and constitute a single accident.

The district court properly denied the Munroes' stacking claim.

*******

The portion of the district court's partial summary-judgment order denying the Munroes' stacking claim is affirmed.  The portions of the district court's partial summary-judgment order and order on reconsideration finding a $2,000,000 UIM limit are reversed.  The case is remanded for proceedings consistent with this opinion.

_____