# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1289

_____

Bradley Larson

*Plaintiff - Appellant*

v.

Nationwide Agribusiness Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 20, 2013
Filed: January 15, 2014

_____

Before RILEY, Chief Judge, MELLOY and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

Bradley Larson appeals the district court's[1] adverse grant of summary judgment respecting the timeliness of his lawsuit against Nationwide Agribusiness Insurance

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Company (Nationwide) seeking coverage under Larson's employer's underinsured motorist (UIM) policy with Nationwide.[2]  We affirm.

## I.    BACKGROUND

### A.    Collision and Underlying Lawsuit

On May 9, 2007, Robert Thompson was hauling liquid fertilizer in rural southern Minnesota when he drove over railroad tracks.  Shortly after clearing the tracks, Thompson checked the containment tank in his mirror and noticed it was leaking fertilizer.  Thompson then stopped his truck and called Timothy Gudal, Thompson's employer and the truck's owner, who arranged to have county employees spread sand over the fertilizer and place warning flags at both ends of the spill.

Later that day, Larson was driving a grain truck for his employer, Farmers Cooperative Company (Farmers).  Larson approached the same railroad tracks from the opposite direction Thompson had been traveling and at the same time a train approached the crossing.  As Larson passed over the stretch of road covered by fertilizer and sand, he was unable to stop before colliding with the train.

On May 5, 2009, Larson served Thompson with a state court summons and complaint, alleging Thompson's negligence caused over $2 million in damages.[3]  On June 16, 2009, Larson filed the summons and complaint in Minnesota state district court.  Larson later amended his complaint to add Gudal as a defendant.  In February 2012, Larson settled with Thompson and Gudal for $500,000.

---

[2]We have appellate jurisdiction under 28 U.S.C. § 1291.

[3]Larson's original complaint included additional defendants not relevant to this appeal.

**B.    Suit Against Nationwide**

On May 30, 2012, Larson, a resident of Minnesota, filed this diversity suit in the District of Minnesota against Nationwide, an Iowa corporation with its principal place of business outside Minnesota. See 28 U.S.C. § 1332(a). Larson alleged he was "an insured" under an Iowa insurance policy Farmers obtained from Nationwide. The policy included UIM coverage for covered vehicles "licensed or principally garaged in . . . Iowa." The policy covered payments for certain injuries to insured parties caused by the owner or operator of an uninsured or underinsured vehicle. Paragraph E.3.b. of the UIM endorsement (timeliness condition) limited the period in which an insured could bring suit as follows:

> **b.** Any legal action against us under this Coverage Form must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply if, within two years after the date of the "accident", the "insured" has filed an action for "bodily injury" against the owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle",[4] and such action is:
>
>> **(1)** Filed in a court of competent jurisdiction; and
>>
>> **(2)** Not barred by the applicable state statute of limitations.
>
> In the event that the two year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

Boiled down, the timeliness condition provided (1) a general rule requiring suit be "brought" against Nationwide within two years of the accident, with (2) an exception

---

[4]The UIM endorsement defined the phrase "uninsured motor vehicle" as a motor vehicle "for which the sum of all liability bonds or policies at the time of the 'accident' do not provide at least the amount an 'insured' is legally entitled to recover as damages resulting from 'bodily injury' caused by the 'accident.'"

-3-

allowing the insured to use the "applicable state statute of limitations" as the measure of timeliness if the insured had "filed an action" "in a court of competent jurisdiction" against the underinsured owner or operator within two years of the accident.

On September 24, 2012, Nationwide moved for summary judgment, arguing, among other things, the suit was untimely. The district court granted Nationwide's motion, concluding Larson's suit was untimely under the terms of the policy. The district court first found that Larson had not met the timeliness condition's general two-year limit because his action against Nationwide, filed May 30, 2012, came more than two years after the May 9, 2007, accident. The district court then found the exception inapplicable because Larson had not filed his complaint against Thompson in a court until June 16, 2009, more than two years after the accident. Though Larson's May 5, 2009, service of process under Minnesota law commenced the lawsuit within the two-year period, see Minn. R. Civ. P. 3.01(a) ("A civil action is commenced against each defendant . . . when the summons is served upon that defendant."), the district court reasoned the policy unambiguously refers to filing *in a court* rather than commencing a lawsuit. Larson timely appealed.

## II.    DISCUSSION
### A.    Applicable Law and Standard of Review

The parties agree Minnesota substantive law governs this diversity case. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). "We must predict how the Supreme Court of Minnesota would rule, and we follow decisions of the intermediate state court when they are the best evidence of Minnesota law." Friedberg v. Chubb & Son, Inc., 691 F.3d 948, 951 (8th Cir. 2012). We review de novo the district court's grant of summary judgment, "viewing the record most favorably to the nonmoving party and drawing all reasonable inferences for that party." Munroe v. Cont'l W. Ins. Co., 735 F.3d 783, 786 (8th Cir. 2013). We also review "de novo the district court's construction of an insurance policy and interpretation of state law." Id.

-4-

**B.     Meaning of "Filed"**

The crux of this appeal is the exception in the policy's timeliness condition, which only applies if we conclude Larson "has filed an action for 'bodily injury' against the owner or operator" of an underinsured vehicle "in a court of competent jurisdiction" "within two years after . . . the 'accident.'"  Larson argues the term "filed" as used in the timeliness exception reasonably should be read to require "commencement" within the two-year period, which Larson did by his May 5, 2009, service of process.  See Minn. R. Civ. P. 3.01(a).[5]  If this interpretation is reasonable, Larson maintains, the doctrine of *contra proferentem* requires us to construe the policy against Nationwide and in Larson's favor.

In Minnesota, the plain language of an unambiguous insurance policy controls its legal effect, whereas an ambiguous policy term is construed strictly against the insurer.  See Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., 825 N.W.2d 695, 704-05 (Minn. 2013).  Ambiguity exists where the policy's language is "'susceptible to two or more reasonable interpretations.'"  Id. at 705 (quoting Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 45 (Minn. 2008)).  In making that determination, the policy "'[p]rovisions . . . are to be interpreted according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean.'"  Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628, 636 (Minn. 2013) (quoting Farmers Home Mut. Ins. Co. v. Lill, 332 N.W.2d 635, 637 (Minn. 1983)).  This requires that we "not construe individual words or phrases in insurance policies in isolation," but instead "read the policy as a whole."  Bolduc, 825 N.W.2d at 706.  We also refrain from interpreting the policy in a way that renders any provision meaningless.  See id. at 705.

---

[5]Nationwide contends Larson forfeited this ambiguity argument by failing to raise it in the district court.  In our review of the record, Larson sufficiently raised the ambiguity argument during the summary judgment hearing.

### 1. Definitions of "Filed"

Dictionaries, as Larson notes, define the verb "file" as having multiple meanings, including (1) the delivery of a legal document to the court, and (2) the commencement or initiation of a lawsuit. See, e.g., Black's Law Dictionary 660 (8th ed. 2004) (including in its definitions: "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record," and "[t]o *commence* a lawsuit." (emphasis added)); *File*, Merriam-Webster, http://www.merriam-webster.com/dictionary/file? (last visited Jan. 3, 2014) (including in its definitions: "to place among official records as prescribed by law" and "to initiate (as a legal action) through proper formal procedure").

By Larson's reasoning, these general definitions allow us to read "commenced" where the policy provision uses "filed." Commencement, in turn, was accomplished by service under specific application of Minnesota's procedural rules. See Minn. R. Civ. P. 3.01(a). When viewed in isolation, this reading appears reasonable. See, e.g., Fed. Land Bank of St. Paul v. Bennett, 445 N.W.2d 279, 281 (Minn. Ct. App. 1989) (concluding the language "filing a separate action" was ambiguous as used in Minn. Stat. § 582.30, subd. 5(a) (1988)). Nevertheless, a term's ambiguity cannot be definitively established by the pages of a dictionary because "[t]he sense of a word depends on how it is being used." Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am., 517 N.W.2d 888, 892 (Minn. 1994) ("Because a word has more than one meaning does not mean it is ambiguous.").

### 2. Context

Applying fundamental principles of Minnesota contract interpretation law, we again reference that "we do not construe individual words or phrases in insurance policies in isolation," but instead "read the policy as a whole." Bolduc, 825 N.W.2d at 706. "[O]nly if more than one meaning applies within that context does ambiguity arise." Royal Ins. Co., 517 N.W.2d at 892. Here, context proves decisive.

First, we note the policy's timeliness exception uses the word "filed" a second time. The exception requires that the insured's action be "[f]iled *in a court* of competent jurisdiction." (Emphasis added). The exception, in effect, requires that the insured's suit be "*filed in a court of competent jurisdiction*" "within two years of the accident." (Emphasis added). See Auto-Owners Ins. Co. v. Second Chance Invs., LLC, 827 N.W.2d 766, 772 (Minn. 2013) ("When the same language is used throughout a statute, we presume 'that it is used with the same meaning until the contrary is shown.'" (quoting Christgau v. Woodlawn Cemetery Ass'n, 293 N.W. 619, 624 (Minn. 1940))); see also 2 Steven Plitt et al., Couch on Insurance § 22:42 (3d ed. 2013) ("An expression to which a plain meaning is attached in one part of an instrument is held to have the same meaning in other parts of the same instrument unless a contrary purpose plainly appears."). And by specifying the filing must be "in a court," the policy expressly and unambiguously adopts the filing act of initiating such action *in a court*, rather than simply announcing a lawsuit to the opposing party.

Second, immediately preceding the exception is the policy's more general rule for timeliness, which states, "Any legal action against us under this Coverage Form must be *brought* within two years after the date of the 'accident.'" (Emphasis added). The two sentences—the general timeliness rule and its exception—use different language as between the required acts: within two years, Larson must have either "brought" an action against Nationwide or "filed" an action against the underinsured vehicle's owner or operator. To "bring an action" is a generic phrase, meaning "[t]o sue" and "[to] institute legal proceedings," Black's Law Dictionary 205 (8th ed. 2004), and which Larson admits is commonly used as a synonym for the act of "commencing" an action.[6] This contrasting language between successive sentences

_____

[6]At oral argument, Larson's counsel responded to a question and declared: "'Brought,' I would respectfully submit, is a potentially ambiguous term, but its most common meaning would be 'an action was commenced,' and we did that in Minnesota by a timely service of process. . . . The best argument I can give on behalf of my client is that 'brought' is a further suggestion that it's suit commencement that

again suggests the exception intends the literal meaning of "filed" as opposed to the generic act of initiating a lawsuit. See Mauer v. Kircher, 587 N.W.2d 512, 514-15 (Minn. Ct. App. 1998) (finding different language in nearby clauses addressing "parallel issues" expressed the parties' "clear intention of creating different requirements"); Taracorp, Inc. v. NL Indus., Inc., 73 F.3d 738, 744 (7th Cir. 1996) ("[W]hen parties to the same contract use such different language to address parallel issues . . . , it is reasonable to infer that they intend this language to mean different things."); cf. Dereje v. State, 837 N.W.2d 714, 720 (Minn. 2013) ("[W]hen different words [in a court rule] are used in the same context, we assume that the words have different meanings.").

We are unconvinced by Larson's proposition that Nationwide requires filing an action against the owner or operator for the sole purpose of preserving Nationwide's subrogation rights. As Larson's proposal goes, the two-year filing requirement merely guarantees a timely suit against the owner or operator, thereby making the action's *commencement* the key date. This argument lacks merit because the policy exception already protects Nationwide's subrogation rights from untimeliness by requiring in subsection (2) that the insured's action against the owner or operator cannot be "barred by the applicable state statute of limitations." We could imagine other purposes for which Nationwide would require a timely filing with the court. Under the previous procedural rules in Minnesota, filing in a court was not immediately necessary, and without a contract requiring filing in a court, a lawsuit could linger privately with no guarantee it would ever appear on a court's docket.[7]

this is all about."

[7]Minnesota now requires most cases be filed in a court within a year of service. See Minn. R. Civ. P. 5.04. Minnesota previously required only that the complaint be "filed with the court within a reasonable time after service." Minn. R. Civ. P. 5.04 (2012) (amended 2013). This sometimes permitted filing years after a suit's commencement. See, e.g., Scheff v. Scheff, No. A05-911, 2006 WL 1073045, at *4 (Minn. Ct. App. Apr. 25, 2006) (unpublished) (finding a "more than two-year delay

Recognizing we must view the language of a policy "as a whole" and "'fastidiously guard against the invitation to create ambiguities where none exist,'" Bolduc, 825 N.W.2d at 706 (quoting Columbia Heights Motors, Inc. v. Allstate Ins. Co., 275 N.W.2d 32, 36 (Minn. 1979)), we decide Larson's interpretation is unreasonable in that such a reading relies on selected dictionary definitions which are contradicted by the context of the policy.[8]  In context, the policy's timeliness exception expressly establishes "filed" means "in a court," and it does not refer to the generic event of commencing legal proceedings.  The policy plainly requires Larson to have filed his action "in a court of competent jurisdiction" within two years of the underlying accident, a condition which was not satisfied here.

## III.  CONCLUSION

For these reasons, we affirm the well-reasoned decision of the district court.

_____

---

between service and filing of the summons and petition was not unreasonable").

[8]In reaching this conclusion, we do not ignore Bennett, where the Minnesota Court of Appeals concluded a state statute, see Minn. Stat. § 582.30, subd. 5(a) (1988), was ambiguous in its use of the language "filing a separate action."  Bennett, 445 N.W.2d at 280.  The reasoning of Bennett is not persuasive here because our interpretation must consider the words "as a whole" within the unique context of the Nationwide policy.  Bolduc, 825 N.W.2d at 706; see also Royal Ins. Co., 517 N.W.2d at 892.