# United States Court of Appeals

## For the Eighth Circuit

_____

No. 21-2815

_____

John David Eberlein

*Plaintiff - Appellant*

v.

Standard Fire Insurance Company, doing business as The Travelers Companies

*Defendant - Appellee*

_____

No. 21-2925

_____

John David Eberlein

*Plaintiff - Appellee*

v.

Standard Fire Insurance Company, doing business as The Travelers Companies

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 12, 2022
Filed: September 6, 2022

_____

Before ERICKSON, STRAS, and KOBES, Circuit Judges.

_____

STRAS, Circuit Judge.

John Eberlein insured his motorcycle under its own policy. Can he get underinsured-motorist benefits under a different policy, one that covers vehicles *other than* his motorcycle? The district court[1] said no, and we reach the same conclusion.

I.

John Eberlein suffered serious injuries when his motorcycle collided with a car driven by a negligent motorist. He faced hefty medical bills and other expenses after the accident, so he turned to insurance for help. He started with the other driver's policy. After exhausting its liability limits, he next looked to the underinsured-motorist benefits of a policy covering just his motorcycle. When those benefits fell short too, he turned to a policy underwritten by Standard Fire Insurance Company that covered vehicles *other than* his motorcycle.

That fact proved decisive for Standard Fire. Relying on what the parties call the owned-but-not-insured exclusion, it denied coverage because the accident occurred with a vehicle that Eberlein had decided to insure elsewhere. On cross-motions for summary judgment, the district court agreed with Standard Fire that it owed nothing.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

II.

"Interpretation of an insurance policy, and whether [it] provides coverage in a particular situation, are questions of law that we review de novo." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 704 (Minn. 2013). Here, Minnesota law applies because we are interpreting a Minnesota policy. *C.S. McCrossan Inc. v. Fed. Ins. Co.*, 932 F.3d 1142, 1145 (8th Cir. 2019). In Minnesota, as elsewhere, "[c]ontracts of insurance . . . [are] construed . . . in their plain, ordinary, and popular sense." *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960).

A.

As in many insurance disputes, the answer in this case comes down to what the policy says. It says:

> [Standard Fire] will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" because of "bodily injury":
>
> 1.　　Sustained by an "insured" and
> 2.　　Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle[.]"

At first glance, it appears that Eberlein checks all the boxes. He is an "insured" who was "legally entitled to recover" for his "bodily injur[ies]" from the other driver, whose vehicle was "underinsured" because the limits under his liability policy were too low for Eberlein. *See Broton v. W. Nat'l Mut. Ins. Co*, 428 N.W.2d 85, 90 (Minn. 1988).

But insurance policies have exclusions, and the Standard Fire policy is no exception. The relevant one here is the owned-but-not-insured exclusion, which states:

> [Standard Fire does] not provide coverage *under this Coverage Section* for "bodily injury" sustained by any "insured":
>
> > 1. While "occupying" any motor vehicle owned by that "insured" which is not insured for *this coverage*. This includes a trailer of any type used with that vehicle.

(emphasis added). In a policy that spans dozens of pages, this case turns on just two words: "this coverage."

B.

The parties have competing interpretations. One possibility, raised by Eberlein, is that "this" refers to underinsured-motorist coverage generally, meaning that having "coverage" under *another* policy is good enough to avoid the application of the owned-but-not-insured exclusion. Standard Fire's position, on the other hand, is that "this" is more specific and establishes that the underinsured-motorist coverage must come from *its* policy, not some other policy. The district court sided with Standard Fire, and so do we.

The first textual clue is the use of the word "this," which grammatically "refer[s] to the . . . thing present, nearby, or just mentioned." *The American Heritage Dictionary of the English Language* 1810 (5th ed. 2016). To figure out what "this coverage" means, we can look at what is "nearby" or "just mentioned." The nearest possible antecedent is only a few lines up: "coverage under this Coverage Section." The "Coverage Section" in question is the "Uninsured Motorists Coverage and Underinsured Motorists Coverage Section," which means that "this" refers to the Standard Fire policy itself.

-4-

A second textual clue reinforces this reading. When the policy refers to a type of coverage in general, it does not use "this coverage." *See Harleysville Ins. Co. v. Physical Distrib. Servs., Inc.*, 716 F.3d 451, 459 (8th Cir. 2013) ("[W]e read and study provisions in an insurance contract . . . in context with all other relevant provisions and the language of the policy as a whole." (brackets and quotation marks omitted)).

One example is the personal-injury-protection exclusion, which says that "*[t]his coverage* does not apply . . . [t]o 'bodily injury' sustained by any 'relative' if such 'relative' is entitled to personal injury protection coverage as a . . . '[n]amed insured' under the terms of *any other policy* with respect to *such coverage*." (emphasis added). There, "such coverage" and "this coverage" mean different things. "[S]uch coverage," because it follows "any other polic[ies]," generally refers to a *type* of coverage. "[T]his coverage," by contrast, unambiguously refers to this specific policy because it is limiting the scope of coverage, which it cannot do for other policies. There is no reason to interpret the same phrase in the owned-but-not-insured exclusion any differently. *See Larson v. Nationwide Agribusiness Ins. Co.*, 739 F.3d 1143, 1147 (8th Cir. 2014) (explaining that a word or phrase in one part of an insurance policy typically means the same thing elsewhere, "unless a contrary purpose plainly appears" (quoting 2 Steven Plitt et al., *Couch on Insurance* § 22.42 (3d ed. 2013)).

We also reject Eberlein's argument that the exclusion is ambiguous. Even if "this coverage" might lend itself to some ambiguity in isolation, the remainder of the policy points to only one reasonable interpretation: the owned-but-not-insured exclusion applies in precisely this situation.[2] *See L.H. Bolduc Co.*, 825 N.W.2d at 706 ("[W]hen determining if an ambiguity truly exists we read the policy as a whole, and will fastidiously guard against the invitation to create ambiguities where none exist." (citations and internal quotation marks omitted)); *see also New London Cnty.*

_____

[2]Our interpretation of the owned-but-not-insured exclusion means that Standard Fire does not owe Eberlein anything, so there is no need to address its other arguments.

-5-

*Mut. Ins. Co. v. Fontaine*, 45 A.3d 551, 560 (R.I. 2012) (interpreting nearly identical language and concluding that "this coverage" unambiguously refers to the "coverage offered by the [particular] policy" and not to underinsured-motorist "coverage in general").

III.

We accordingly affirm the judgment of the district court.

_____